**AFFIDAVIT**

I, John Graves, Task Force Officer with the FBI, being duly sworn, do depose and state that:

**INTRODUCTION**

1.    I am an Officer of the Cleveland Division of Police, and a Task Force Officer with the FBI's Cartel Gang Narcotics & Laundering Task Force. Accordingly, I am a law enforcement officer within meaning of Title 18, Section 2510 (7) United States Code, and am empowered by law to conduct investigations and to make arrests for Federal felony offenses enumerated in Title 18, Section 2510 (7) United States Code.

2.    To briefly summarize the facts set forth in more detail below, the investigation has shown that REYES JOHN SANCHEZ-BORRERO sold fentanyl to two separate individuals (referred to here as "M.G." and "J.H.") in Cleveland, Ohio on or about May 4, 2022.   Both M.G. and J.H. were subsequently found dead at their respective residences.   Investigation by the Cuyahoga County Medical Examiner ("CCME") concluded that both M.G. and J.H. had died of drug overdoses.   Information recovered from the cell phones of M.G. and J.H. showed that on the evening of May 4, 2022, they had each purchased fentanyl by contacting a drug dealer at a phone number ending in -7713.

- 2 -

3.     Law enforcement subsequently received information that SANCHEZ-
BORRERO was the user of the -7713 phone, and that the drug sale to J.H. on May
4th occurred at SANCHEZ-BORRERO's residence at 3444 West 94th Street,
Cleveland, Ohio.   Investigators then obtained search warrants for SANCHEZ-
BORRERO's residence and his DNA standard, which were executed on May 10,
2022.   During the search warrant at SANCHEZ-BORRERO's residence,
investigators recovered two firearms, ammunition, and drug paraphernalia.
SANCHEZ-BORRERO is a felon, and is therefore not legally allowed to possess
a firearm or ammunition under federal law.   Investigators also seized from
SANCHEZ-BORRERO the same -7713 cell phone that was used to sell M.G. and
J.R. drugs prior to their deaths.   Further, during his interaction with law
enforcement on May 10th, SANCHEZ-BORRERO made incriminating statements
about his involvement in the deaths of M.G. and J.H.   SANCHEZ-BORRERO
was arrested on state charges as a result of that search warrant, but was granted a
bond by the Cuyahoga County Common Pleas Court.

4.     As the investigation continued, on July 21, 2022, a third victim
("R.F.") was found dead of a suspected drug overdose at his residence in
Cleveland.   Several grams of fentanyl were found near R.F.'s body, and
information from R.F.'s cell phone indicated that R.F. had purchased those drugs

- 3 -

on the morning of July 19, 2022 from a drug dealer using a phone ending in -6770.

Further investigation showed that SANCHEZ-BORRERO was the user of the -

6770 phone that sold R.F. fentanyl prior to his death. Investigation also showed

that R.F. had taken an Uber to SANCHEZ-BORRERO's residence on the morning

of July 19th to purchase the drugs. Additionally, the Cuyahoga County Regional

Forensic Sciences Laboratory ("CCRFSL") examined the drug baggies found near

R.F.'s dead body, and found that SANCHEZ-BORRERO's DNA profile was on

one of those baggies, which further corroborates that SANCHEZ-BORRERO sold

fentanyl to R.F. on the morning of July 19, 2022.

    5.    Accordingly, this criminal complaint charges REYES JOHN

SANCHEZ-BORRERO with the following four (4) offenses:

    **a.** On or about May 4, 2022, REYES JOHN SANCHEZ-BORRERO did

    knowingly distribute a mixture and substance containing fentanyl, a

    Schedule II controlled substance, to person "M.G.," in violation of

    Title 21, United States Code, Section 841(a)(1), (b)(1)(C);

    **b.** On or about May 4, 2022, REYES JOHN SANCHEZ-BORRERO did

    knowingly distribute a mixture and substance containing fentanyl, a

    Schedule II controlled substance, to person "J.H.," in violation of Title

    21, United States Code, Section 841(a)(1), (b)(1)(C);

- 4 -

    **c.** On or about May 10, 2022, REYES JOHN SANCHEZ-BORRERO

        did knowingly possess a firearm and ammunition as a convicted felon,

        in violation of Title 18, United States Code, Section 922(g)(1); and

    **d.** On or about July 19, 2022, REYES JOHN SANCHEZ-BORRERO

        did knowingly distribute a mixture and substance containing fentanyl,

        a Schedule II controlled substance, to person "R.F.," in violation of

        Title 21, United States Code, Section 841(a)(1), (b)(1)(C);

## TRAINING AND EXPERIENCE

    3.   I have been employed by the Cleveland Division of Police for over twenty-seven years, previously assigned to the Second District Vice Unit for 18 years, and am currently assigned to the Narcotics Unit since December 2019.   I was sworn as a Task Force Officer to the Federal Bureau of Investigation August 29, 2022.   I have been assigned responsibilities to investigate state and federal crimes involving Money Laundering and Drugs.   I have assisted in and conducted investigations into the unlawful importation, possession with intent to distribute, distribution of controlled substances, the money laundering of monetary instruments, monetary transactions in property derived from specified unlawful activities, and the associated conspiracies, in violation of Title 21,

- 5 -

United States Code, Sections 841 (a)(1), 843 (b), 846, 952 (a) and 963, United States Code, Sections 371 and 1956.

4.   I have received specialized instruction about narcotics, narcotics trafficking, money laundering and various techniques for investigating persons and organizations engaged in this unlawful conduct.   During the past twenty-seven years, I have participated in investigations involving the organized distribution of illegal drugs and have made numerous arrests for drug-related offenses.   My experience as a Cleveland Police Detective/ Task Force Officer includes, but is not limited to: physical surveillance, analyzing telephone toll data, interviewing witnesses, drafting and executing search warrants, seeking seizure of illegal drugs and other evidence of drug violations, assisting in the purchases of controlled substances by undercover agents and informants, and debriefing persons arrested and convicted of drug trafficking offenses about their illegal activity.

5.   Through investigation and training, I have become familiar with the types and amounts of prices charged and profits made by drug dealers, as well as the methods, language, and terms which are used to disguise their illegal activity.

- 6 -

6.  I have investigated numerous drug overdose death cases.  I estimate that I have investigated well-over one hundred (100) drug overdose cases during my career.  I am also part of the Cleveland Police Heroin Involved Death Investigations (HIDI) group.

## FACTS AND CIRCUMSTANCES REGARDING PROBABLE CAUSE

### Drug Overdose Death of Victim "M.G" on May 5, 2022

7.  On Thursday May 5, 2022, Cleveland Division of Police Officers responded to a call for a dead body, suspected drug overdose, at XXXX West 94th Street Cleveland, Cuyahoga County, Ohio (exact street addresses of victims are redacted here).  I was notified and responded to that address.  The overdose death victim was identified as "M.G." (full name not included here), an adult female who lived at the address.[1]

8.  Patrol officers found M.G. in the upstairs bedroom, sitting on the floor with her back against the wall.  Paramedics had pronounced M.G. dead on scene.  Patrol officers conducted a cursory search of the bedroom and found a small bottle of alcohol on the dresser, but not signs of foul play or trauma.

9.  A plastic baggie of suspected drugs was recovered inside of a napkin inside M.G.'s bra, along with a straw.  The drugs in the baggie were later found

---

[1] It should be noted that M.G. lives next door to SANCHEZ-BORRERO's residence.

- 7 -

by the CCRFSL to be a mixture of fentanyl, 4-ANPP (a fentanyl precursor), and cocaine, with a net weight of 0.62 grams. The straw was found to contain fentanyl residue. Another small baggie with suspected drugs was found on a drawer next to M.G.'s bed, which was found to contain cocaine by the CCRFSL.

10. A swab from the baggie of drugs recovered from M.G.'s bra was submitted for DNA testing to the CCRFSL. The CCRFSL found a match between M.G.'s DNA profile and the DNA on the swab on the baggie, but was unable to find a match with SANCHEZ-BORRERO's DNA profile on the baggie.

11. I know that cocaine can sometimes be mixed or "cut" with fentanyl before it is sold to end users. A person who expects to ingest cocaine, but unknowingly ingests fentanyl instead, can be especially susceptible to a drug overdose, given the high potency of fentanyl.

12. Law enforcement recovered M.G.'s cell phone on scene. While reviewing M.G.'s cell phone, I observed text messages from May 4, 2022, showing that M.G. had bought $40 of drugs from a dealer using phone number ending in -7713. Specifically, at 9:07 p.m. on May 4th, M.G. texted, *"Hey [M.G.'s name redacted] I wanted 40 I'm about to go to the store you want to meet me there."* At 9:08 p.m., M.G. again texted, *"Hey it's me [M.G.'s name*

- 8 -

*redacted] I'm about to go to the store today to machine you want to meet me there or get 40 bucks out yes or no before I go get the money out*."   At 9:13pm, M.G. texted, "*Hey I'm at the store again as ATM machine get 40 bucks off where should I meet you*."   At 9:18 p.m., M.G. texted, "*Hey it's me [M.G.'s name redacted]*."   At 9:18 p.m., the -7713 number texted M.G.'s phone, "*40?*"[2] At 9:29, M.G. texted, "*Is [M.G's name redacted] I got 40 bucks*."   M.G.'s phone also contained a draft text message to the -7713 number that had not yet been sent saying, "*You coming out cuz I got to get ready to go to my vacation*." Based on my training and experience, this text message exchange reflected M.G. purchasing $40 worth of drugs from the user of the -7713 number.

13.   I subsequently reviewed records showing that on May 4, 2022, M.G.'s bank card had been used at the Star Market, located at 3371 West 98th Street, Cleveland, OH, to make a purchase of $9.24 and receive $40.00 in cash back, which is consistent with her statements in the text messages.

14.   At approximately 2:56 p.m. on May 5, 2022, after M.G.'s was deceased and her phone was in law enforcement possession, her phone received a series of incoming text messages from the -7713 number, which read: "*? . . . ?*

---

[2] The 9:18 p.m. text from the -7713 number to M.G. saying "40?" was recovered from the -7713 phone, after that phone was seized on May 10, 2022.   More detail on that is below.

- 9 -

. . . *Is that stuff better than the last stuff? . . . ? . . . ?*"  Based on my training and experience, the user of the -7713 number was asking M.G. (who they did not realize was dead at that point) how the drugs sold to her on May 4th compared to drugs she had bought on previous occasions.

15. Aside from an outgoing call to a phone number identified as belonging to M.G.'s husband at approximately 9:32 p.m. that lasted 5 seconds, M.G.'s phone showed no other outgoing messages, outgoing calls, or incoming calls that were answered, after the drug deal with the -7713 phone, which appears to have occurred around 9:30 p.m.   This corroborates that the drugs M.G. received from the user of the -7713 phone number were the drugs that she overdosed and died from.

16. The CCME conducted an autopsy and death investigation, and determined M.G.'s cause of death to be "acute combined toxic effects of ethanol (alcohol) and fentanyl, ACCIDENTAL."   Though it should be noted that the CCME pathologist who conducted M.G.'s autopsy confirmed that fentanyl was the but-for cause of M.G.'s death, meaning that M.G. would not have died without her investigation of fentanyl.

- 10 -

## Drug Overdose Death of Victim "J.H."

17. On May 6, 2022, Cleveland Division of Police Officers responded to a call for a dead body, suspected overdose at XXXX East 36th Street Cleveland, Ohio.   I was notified and also responded to that address.   The victim was identified as J.H., an adult male who lived in the attic of the residence.   J.H. was found dead sitting on a couch / chair in the attic.

18. Another resident (referred to here as "H.Y.") was at the house, and spoke to the officers on scene.   H.Y. reported that J.H. lived in the upstairs attic of the residence.   H.Y. explained that he had last seen J.H. on May 4, 2022 after work, when J.H. stated he was tired and was going to bed.   H.Y. said he did not hear from J.H. on May 5th, and that J.H. was not answering any texts or calls. So H.Y. went up to J.H.'s room in the attic and could hear J.H. snoring, so he left J.H. alone.   H.Y. said that on May 6th (the date police responded), he went up to J.H.'s room and found J.H. laying on the couch face-up with his eyes open, and that J.H. was cold to the touch.

19. A plastic baggie with suspected drug residue and a fragment of what appeared to be crack cocaine was recovered on a chair in front of J.H. in the attic.   Three glass smoking pipes were also recovered from J.H.'s attic bedroom. The CCRFSL later determined that the fragment of suspected crack cocaine

- 11 -

found on the chair contained a mixture of 4-ANPP (a fentanyl precursor) and fentanyl, with a net weight of 0.25 grams; that the plastic baggie contained cocaine residue; and that the glass pipe selected for testing contained residue of 4-ANPP (a fentanyl precursor), fentanyl, and cocaine.

20. A swab from the plastic baggie was submitted for DNA testing to the CCRFSL. The CCRFSL found a match between J.H.'s DNA profile and the DNA on the swab on the baggie, but was unable to find a match with SANCHEZ-BORRERO's DNA profile on the baggie.

21. I reviewed J.H.'s cell phone, which was recovered on scene, and found a number of text messages between J.H. and the same -7713 phone number discussed above. One text message conversation between J.H. and the -7713 number showed that J.H. had purchased drugs from the -7713 number on May 4, 2022.[3] This text conversation took place between approximately 10:20 p.m. and 10:58 p.m. on May 4th. Starting at 10:20 p.m., J.H. texted, "*I need another 20.*" The -7713 number texted, "*Text me when u on porch.*" J.H. texted, "*Okay.*" The -7713 number texted, "*Don't be loud.*" J.H. texted, "*Okay.*" J.H. texted, "*I'll be there in 10 minutes try to show me some love . . .*

---

[3] It should be noted that the -7713 phone number was saved in J.H.'s phone as "John M," and SANCHEZ-BORRERO's full legal name is Reyes John Sanchez-Borrero.

- 12 -

*And don't fall asleep lol.*"   The -7713 number texted, "*Lol ok.*"   At 10:58 p.m.,

J.H. texted, "*I'm on the porch.*"   The -7713 number texted, "*Ok hold up.*"

Based on my training and experience, this text message conversation indicates

that J.H. traveled to the location of the -7713 number's user to purchase $20

worth of drugs.

22. A review of J.H.'s phone also showed that on May 5th at

approximately 8:32 a.m., the -7713 number called J.H., but the call was not

answered.   The -7713 number then sent a text message to J.H. at approximately

8:47 a.m. on May 5th that read, "*Yo.*"   Again, J.H. did not respond.

23. I also reviewed the saved Google Maps location information from

J.H.'s cell phone.   According to that information, on May 4, 2022, J.H. left his

residence on East 36th Street and drove to 3444 West 94th Street (which is

SANCHEZ-BORRERO's residence, as explained below), arriving at 10:58 p.m.,

and then departing at 11:01 p.m.   This coincides with the text messages between

J.H. and the -7713 number.   The Google Maps information on J.H.'s phone then

showed that J.H. left SANCHEZ-BORRERO's residence on West 94th Street

and directly back to his residence on East 36th Street.   After that, on May 5th,

the Google Maps information on J.H.'s phone indicated that his phone did not

- 13 -

take any trips, and instead remained at the residence on East 36th Street for the entire day.

24. After the drug deal with the -7713 number (which appears to have taken place at around 11:00 p.m. on May 4th), J.H.'s phone did not reflect any outgoing calls, outgoing messages, or answered incoming calls until he was found dead on May 6th. This corroborates that the drugs J.H. received from the -7713 phone number were the drugs that he overdosed and died from.

25. A review of J.H.'s phone also showed that there were previous text messages with the -7713 number that discussed J.H. buying drugs. For example, on May 1, 2022, the following text conversation occurred. J.H. texted, *"Can I come thru?"* The -7713 number texted, *"What u needed."* J.H. texted, *"40 . . . You got it?"* The -7713 number texted, *"Yes . . . Text me when u on porch."* Later in the May 1st conversation, the -7713 number texted, *"Was that better than the brown stuff?"* J.H. texted, *"For sure . . . Thats why I came back for more."* The -7713 number texted, *"Ok just making sure . . . That shirt is hard to make."* Based on my training and experience, these messages indicate that J.H. purchased $40 worth of drugs from the user of the -7713 number on or about May 1st. I also believe that when the -7713 number said *"That shirt is hard to make,"* the -7713 number actually meant to say *"That <u>shit</u>*

- 14 -

*is hard to make*," and that the text message was auto-corrected. I believe that the user of the -7713 number was referring to mixing their own drugs for sale, and that "*brown stuff*" is a reference to heroin or fentanyl.

26. The CCME conducted an autopsy and death investigation, and determined J.H.'s cause of death to be "acute intoxication by cocaine and fentanyl, ACCIDENTAL."

### Search Warrant at SANCHEZ-BORRERO's Residence on May 10th and Seizure of the -7713 Phone, Two Firearms, Ammunition, and $30,000 in Cash

27. On May 9, 2022, after talking to other law enforcement agencies and learning that SANCHEZ-BORRERO was likely the user of the -7713 phone number, I obtained a search warrant for SANCHEZ-BORRERO's residence at 3444 West 94th Street, Cleveland, Ohio (the same residence victim J.H. had traveled to in order to purchase drugs before he died, according to the Google Maps information discussed above). I also obtained a separate search warrant to obtain a buccal swab of SANCHEZ-BORRERO's DNA.

28. On May 10, 2022, I, along with members of the CPD Narcotics Unit and the DEA, responded to the area of 3444 West 94th Street to execute the search warrants. Other investigators saw SANCHEZ-BORRERO driving his white Acura in another area of Cleveland, so SANCHEZ-BORRERO was traffic stopped in the area of West 68th Street and Franklin Avenue based on the DNA

- 15 -

warrant. SANCHEZ-BORRERO was advised of his *Miranda* rights and shown a copy of the warrants for his DNA standard and his residence. A box of .22 caliber bullets was subsequently located in SANCHEZ-BORRERO's Acura.

29. After being *Mirandized*, SANCHEZ-BORRERO stated there was a small amount of marijuana in the bedroom and two guns in a safe at his residence. He said that that he had found the firearms in the residence when he purchased the house two years ago, and kept them for protection in case someone tried to break in to the residence. He also stated that he had just purchased the .22 caliber ammunition (found in his Acura) for one of the firearms. SANCHEZ-BORRERO stated that he wanted to go to back his residence to show the officers where the guns were. He also claimed that he was not selling drugs, but was just using. He claimed that people would come to his house and sell him drugs. He also stated that he was just *keeping it real*, and that he *doesn't f\*\*k with that fentanyl s\*\*t*. I advised SANCHEZ-BORRERO that I never mentioned fentanyl to him. He stated that people like coming with him to get drugs because he puts fentanyl test strips in the drugs when they get cocaine. Officers then responded back to the residence at 3444 West 94th Street with SANCHEZ-BORRERO to execute the search warrant.

- 16 -

30. SANCHEZ-BORRERO also claimed (without me bringing up anything about M.G.) that M.G.'s husband was going to kill M.G with fentanyl because she would not stop sniffing cocaine.

31. I then asked SANCHEZ-BORRERO about victim J.H., and SANCHEZ-BORRERO claimed that J.H. actually sold him drugs, and that they also used drugs together.   When asked about what happened on May 4th (the date J.H. bought drugs from the -7713 number, according to the phone information), SANCHEZ-BORRERO claimed that he smoked marijuana with J.H. on his porch and that J.H. did not buy any drugs from him.   I then informed SANCHEZ-BORRERO that J.H. was dead.   SANCHEZ-BORRERO subsequently made a statement to the effect of, "*You can prove that I sell and use, correct, but I did not give none of them the stuff they died from.*"

32. I asked where the phone was that J.H. was calling and texting. SANCHEZ-BORRERO claimed that he threw that phone away because he cracked the screen on it.   I asked what the number of that phone was, and SANCHEZ-BORRERO provided the -7713 number.   I asked where SANCHEZ-BORRERO threw the phone, and he stated he threw the phone down the street by M.G. (who was his neighbor).   A cell phone was seized from SANCHEZ-BORRERO, which he claimed was not the -7713 number.   I

- 17 -

advised SANCHEZ-BORRERO that I intended to obtain a search warrant for this cell phone and asked for the passcode.   At first, SANCHEZ-BORRERO stated to *go ahead and go through his phone*, but then claimed he didn't have the code.

33. The following items were seized from SANCHEZ-BORRERO's residence during the execution of the search warrant:

a. Black century safe containing loaded Harrington and Richardson model 922 .22 caliber revolver, serial number L43604 and loaded Hi Point model C9 9mm pistol, serial number P1480654 and box of 9mm ammunition (basement cabinet);

b. Tan ballistic vest (NW bedroom by closet);

c. Four (4) packets of suspected marijuana (NW bedroom dresser);

d. Green digital scale, later found by CCRFSL to contain THC and cocaine residue (kitchen counter drawer);

e. Personal papers with SANCHEZ-BORRERO's name (living room/dining room);

f. $500 in cash (purse in bedroom on chair);

- 18 -

g. Small black safe containing $30,000 in cash (NW bedroom on chair);[4]

h. Safe keys (on SANCHEZ-BORRERO's car keys);

34. According to the Cuyahoga County Common Pleas online court docket, SANCHEZ-BORRERO has the following prior felony convictions that prohibit him from possessing a firearm or ammunition under federal law: Trafficking (F3) in case CR-05-463351, on or about October 11, 2007; and Aggravated Robbery (F1), Attempted Murder (F1), and Felonious Assault (F2) in case CR-06-486591, on or about October 11, 2007.

35. I subsequently contacted ATF Special Agent Gerrod Briggs to determine whether any of the firearms or ammunition seized on May 10, 2022 had been manufactured outside the State of Ohio.  SA Briggs advised that the Hi Point 9mm handgun was manufactured in Ohio, but that the Harrington and Richardson .22 caliber revolver, the 9mm seized from the house, and .22 caliber ammunition seized from SANCHEZ-BORRERO's Acura, had all been

---

[4] On May 11, 2022, the seized money was separated and placed in two different locations at the Cleveland Police Narcotics Unit.  A trained canine, Finnegan, handled by a trained canine officer, located both quantities of money and alerted to the presence of an odor of narcotics on both separate quantities.

- 19 -

manufactured outside the State of Ohio, meaning that those items had traveled in interstate commerce before SANCHEZ-BORRERO possessed them.

36. SANCHEZ-BORRERO was arrested and transported to the Cuyahoga County Jail. He was charged with Having Weapons under Disability, but was released on a $25,000 bond.

**Forensic Examination of Cell Phone Seized from SANCHEZ-BORRERO on May 10th Confirming it Was the -7713 Phone that Sold Drugs to M.G. and J.H.**

37. I then obtained a separate search warrant to forensically examine the cell phone that had been seized from SANCHEZ-BORRERO during his on May 10th. Contrary to what SANCHEZ-BORRERO claimed, the forensic examination showed that the cell phone's current SIM card phone number was actually the same -7713 number that had been used to sell drugs to J.H. and M.G. on May 4th prior to their deaths.

38. Notably, SANCHEZ-BORRERO's -7713 phone also contained a text message conversation with another cell phone, ending in -6926, on May 8, 2022. In that conversation, SANCHEZ-BORRERO appeared to instruct the user of the -6926 phone to dispose of some bad drugs that SANCHEZ-BORRERO had provided to them. Notably, this text conversation occurred just a few days after M.G.'s overdose death, which I believe SANCHEZ-BORRERO knew about,

- 20 -

given the statements he made during the search warrant on May 10th, as well as
the fact that M.G. lived next-door to SANCHEZ-BORRERO.   According to a
review of information available to law enforcement, the subscriber of the -6926
phone was an individual identified here by initials only as "R.F" (who later died
of a suspected drug overdose in July 2022, and is discussed in more detail
below).   The May 8th text message conversation between SANCHEZ-
BORRERO and R.F. about getting rid of bad drugs is copied below:

| Sender | Recipient | Content |
|---|---|---|
| R.F. | SANCHEZ-BORRERO | Word. Aye those 2 bags you gave me, was it the shit in the foil or the little baggie that was no good? I kept both but if one of them is still good i wanna do it lol |
| SANCHEZ-BORRERO | R.F. | Can't remember |
| SANCHEZ-BORRERO | R.F. | Just be careful |
| R.F. | SANCHEZ-BORRERO | Alright bro for sure |
| SANCHEZ-BORRERO | R.F. | Really throw it away |
| R.F. | SANCHEZ-BORRERO | Ill be okay dude i have a tolerance for thaymt |
| SANCHEZ-BORRERO | R.F. | Ok let me know |
| R.F. | SANCHEZ-BORRERO | Will do bro |

- 21 -

## Overdose Death of Victim "R.F." on July 21, 2022

39. On July 21, 2022, Cleveland Police responded to XXXX West 32nd Street for a 911 call of a dead body. Upon arrival, officers found victim R.F. dead, laying on a mattress, with a cell phone in his hand. Officers also found a book with white powder (suspected drugs) on top of it, next to R.F. I responded and took photos. Based on my training and experience investigating overdose death cases, it appeared as if R.F. had been dead for at least one day.

40. On scene, the responding officers spoke to "A.A.," the individual who had called 911. A.A. explained that he had been contacted by R.F.'s father, who told A.A. he had been trying to contact R.F., but had not heard from him since July 19th. A.A. said that he then entered the house to check on R.F., and found R.F. dead lying face down on the bed. A.A. explained that R.F. had a heroin addiction.

41. Officers seized the white powder on a book next to R.F., as well as baggie tear-offs on the floor (commonly used to package drugs), a rolled paper (commonly used to snort drugs), and some pills.

42. The white powder was later found to be a mixture of fentanyl and 4-ANPP by the CCRFSL, with a net weight of approximately 5.83 grams.

- 22 -

43. The CCRFSL also found that SANCHEZ-BORRERO's DNA profile was on one of the drug baggies that had been taken from the scene of R.F.'s overdose.

44. Autopsy and cause-of-death reports from the CCME are pending for R.F.

45. I reviewed the contents of R.F.'s cell phone (which was the same - 6926 number discussed above in the paragraph about SANCHEZ-BORRERO giving R.F. instructions to throw away bad drugs after M.G. and J.H.'s overdose deaths).   A review of R.F.'s phone indicated that he had purchased fentanyl and cocaine from a person using cell phone number -6770 on the morning of July 19, 2022.   In particular, the text message conversation between R.F. and the -6770 phone number showed that R.F. had taken an Uber to meet the user of the -6770 phone number on the morning of July 19th, where R.F. obtained around 7 grams of fentanyl and 1 gram of cocaine from the user of the -6770 phone number. Further investigation into the -6770 phone number showed that its user was SANCHEZ-BORRERO, as explained below.

46. In particular, on July 18, 2022, R.F. had a lengthy text message conversation with the -6770 phone number, which continued into the early morning hours of July 19th.   In summary, R.F. was offering to trade his

- 23 -

computer to the user of the -6770 phone number in exchange for drugs.

Pertinent parts of the conversation are copied below (some messages are omitted

for brevity and clarity).   At approximately 11:48pm on July 18th (after a

lengthy back-and forth conversation about R.F. offering to sell/trade his

computer for drugs), R.F. sent a text message to the -6770 phone number saying

"*Bro let me get 7gs of the pure and 1 of the white and I'll bring it [a computer]*

*to you now*" (meaning that R.F. wanted to obtain 7 grams of heroin/fentanyl and

1 gram of cocaine in exchange for his computer).   The -6770 phone number

eventually replied, "*U got a deal in the morning I got my people's holding my*

*stuff bcuz of the pigs*" (meaning that the -6770 phone number agreed to the deal,

but had someone else holding onto their drugs to avoid the police ("*the pigs*")).

The -6770 phone number then asked, "*What time in the am can u bring that* [the

computer]*?*"   R.F. replied, "*Like 7am I gotta work at 830 . . . anyway you could*

*pay for my Uber there? I got the way back but I have 12 bucks left to my name . .*

*. I'ma cut that g of pow n sell it for 1.5 hopefully so I can get some cash*"

(meaning that R.F. was planning to dilute ("*cut*") the 1 gram of cocaine powder

("*pow*") into 1.5 grams to sell and make a profit).   The -6770 phone number

replied, "*come thru at 8 if u can I sent all my money to my lawyer or my cash*

- 24 -

*app and my other cards I didn't give him cash . . . I go to court on Thursday and he's been hassling me.*"[5]

47. After some additional conversation about what time they would meet in the morning, the -6770 number texted, "*Ok u cutting it yourself or u want me to do it?*" (meaning did R.F. want the -6770 user to mix ("*cut*") the drugs for him).   R.F. replied, "*I got it . . . I wanna do a bump firstn I'll weigh the cut out and bring it with me in my backpack*" (meaning that R.F. wanted to take a hit of the drugs (a "*bump*") before mixing them himself).   The -6770 number texted, "*Ok perfect be safe taking that walk bro.*"   R.F. replied, "*Most def I stay with the ppk . . . Eager to use it again . . . Shit is exhilarating*" (meaning that R.F. was excited to use the drugs the -6770 number was going to sell him).   The -6770 phone number replied, "*Ok bro good night and be safe and smart.*"   The text conversation ended around 12:23 a.m. on July 19th.

48. Then on the following morning (July 19, 2022), starting at approximately 5:53 a.m., R.F. texted, "*You still have tar* [meaning tar heroin]*? . .*

---

[5] SANCHEZ-BORRERO was on bond pending a criminal case in Cuyahoga County Case CR-22-670533-A for Weapons Under Disability at the time, which was based on the firearms seized during the May 10th search warrant.   According to the online docket for that case, SANCHEZ-BORRERO was represented by retained counsel, and had a pretrial before Judge John J. Russo on Thursday, July 21, 2022.   This text message therefore corroborates that SANCHEZ-BORRERO was the user of the -6770 phone.

- 25 -

. *Yoyo I'm about to be leaving in 20 . . . Shit bro we still good?*" The -6770 number texted, "*Yeah but I'm not talking in house kids still asleep meet me on the porch.*"[6] Later in the conversation, R.F. texted, "*You got any tar? . . . Or brown stuff[?]*" The -6770 number texted, "*Didn't ask them to bring me that all that's put up*" (meaning that the -6770 number had not asked his associate(s) to bring those types of drugs for R.F.). R.F. replied, "*Ah ok bro word I'm calling Uber now . . . Be there in 20.*" The -6770 number replied, "*Ok waiting on you bro .....and yeah I don't be keeping extra stuff on me no more it's a hassle but I'll see u soon I gotta go aswell.*" R.F. texted, "*Ok bro good idea tho that's what I was telling u to do.. at least til shit blows over . . . Ubers pulling up now.*" The -6770 number asked, "*What car u in?*" R.F. replied, "*Silver or gold Chevy Cruze I'm coming almost there.*" The -6770 number replied, "*Ok bro I'm on porch.*" At 8:22 a.m. R.F. texted, "*I can be there 7 mins before she leaves I'm gonna have her [the Uber driver] park a bit down.*" At 8:23 a.m., the -6770 number texted, "*Ok.*" There was then a roughly 10-minute gap in the text message conversation, and at 8:33 a.m., the -6770 number texted, "*Be careful bro I know u got a high tolerance . . . But just be safe my g.*" R.F. responded, "*I'm good bro I've never*

---

[6] It should be noted that during this investigation, I learned that SANCHEZ-BORRERO has children living at his residence with him.

- 26 -

even came close to ODing [overdosing] . . . *Molly did the last time she used . . .*
*Like 4 days before she left . . . In the little Caesars parking lot.*"  The -6770
number replied, "*Damn bro that sucks.*"  R.F. texted, "*I had a bunch of shit on*
*me had to hide it and run around asking anyone for narcan luckily some chick*
*had some on her.*"  The -6770 number replied, "*Yeah that was a blessing.*"  R.F.
texted, "*That's when I got that half zip off you* [meaning a quantity of drugs] *and*
*I had like 100 of those xans* [referring to Xanax tablets]. *I threw it in the woods*
*took me like 2 hours to come back and find it lmao . . . Just glad she's okay tho.*"
The -6770 number replied, "*Ok bro erase the messages and be safe and I'll call u*
*here in a couple...and yeah I hope you guys get to work it out yeah meant to be*
*together 100.*" After that, R.F.'s phone did not reflect any outgoing calls or
messages until the time he was found dead by police on July 21st.

49. Other information on R.F.'s phone showed that the -6770 phone
number belonged to SANCHEZ-BORRERO.   That information is summarized
below:

a.  ***CashApp to "Reyes Sanchez" at -6770 Number:***   On July 13,
2022, R.F. had a text message conversation with the -6770 phone number.
At 11:19 a.m., the -6770 number texted, "*Ok bro so are u gonna give me*
*that 50 on cash app or cash for the computer? And u said a 50 of soft*

- 27 -

*[powder cocaine] correct?*"   R.F. replied, "*Yep all cash app I just need that computer first homie . . . Make it s 60 if soft . . . Lol . . . Hook it up for your brother man.*"   Later in the conversation, the -6770 number texted, "*I just had my son check the app for me and nothing showed up bro.*"   R.F. responded, "*I sent yesterday I'll screenshot.*"   R.F. then immediately texted a screenshot (copied below) to the -6770 phone number, showing that R.F. had sent $50 to "Reyes Sanchez" via CashApp on Monday:



- 28 -

The -6770 phone number replied to that screenshot by saying, "*It must of not whent thru brother ...I don't have nobody send to my c app but you and my dude ...I only received 50 on Monday from you.*"   I believe this text message exchange further corroborates that SANCHEZ-BORRERO is the user of the -6770 phone.[7]

      b.    *R.F. Making Near-Simultaneous Calls to -6770 and -7713:*

Notably, R.F. had the -7713 number (that sold drugs to M.G. and J.H.) saved in his phone as "John (Ants Bwoy) 2."   A comparison of R.F.'s contacts with the -7713 phone and the -6770 phone showed that on a number of occasions, R.F. tried to contact those two numbers at around the same time, indicating that the -7713 number and the -6770 number belonged to the same person.   For example, on July 13, 2022, at approximately 8:46 p.m., R.F. placed an outgoing call to the -6770 number that lasted 5 seconds. Then, approximately one minute later at 8:47 p.m., R.F. placed three consecutive outgoing calls to the -7713 number that were not answered (as noted above, the -7713 phone had been seized from SANCHEZ-BORRERO on May 10th).   At 8:48 a.m., R.F. then sent a text message to the -7713 number that said, "Call me."   This message went unanswered.   R.F. then

---

[7] Information about this case is being requested from CashApp, but has not been received back yet.

- 29 -

placed another outgoing call to the -7713 number at 8:55 p.m., which again went unanswered. And then at 9:03 p.m., R.F. placed an outgoing call to the -6770 phone number that lasted 4 seconds. Those series of calls and texts strongly indicate that the -7713 number (which was seized from SANCHEZ-BORRERO on May 10th) and the -6770 phone number both belonged to the same person.

   c.     ***Uber Location Data from R.F.'s Cell Phone Showing He Traveled to SANCHEZ-BORRERO's Residence on the Morning of July 19th:*** As indicated above, the text message conversation between R.F. and the -6770 phone number indicates that R.F. took an Uber to meet the user of the -6770 phone number on the morning of July 19, 2022 to purchase drugs (*"Be there in 20...Ubers pulling up now."*). The text message conversation between R.F. and the -6770 number also indicates that R.F. told his Uber driver to park a short distance away from the meeting spot (*"Yeah round trip...I can be there 7 mins before she leaves I'm gonna have her park a bit down."*). A forensic review of R.F.'s cell phone uncovered saved location data from the Uber app, time-stamped the morning of July 19, 2022, for the area of Almira Avenue and West 94th Street, in Cleveland, Ohio (41°27'43.8" North, 81°44'51.2" West). SANCHEZ-BORRERO's

- 30 -

residence at 3444 West 94th Street is on this same block, just south of the intersection of Almira and West 94th. A Google map reflecting the approximate location of SANCHEZ-BORRERO's residence and the location saved in R.F.'s Uber app from the morning of July 19th is copied below:



d. **_SANCHEZ-BORRERO's Court Date:_** As indicated in a footnote above, the user of the -6770 phone also referenced having a court

- 31 -

date on July 21, 2022 and a retained attorney, which is consistent with

SANCHEZ-BORRERO's pending Cuyahoga County case at the time.

50. Based on those facts, I believe that SANCHEZ-BORRERO

distributed fentanyl to R.F. on the morning of July 19, 2022.

## **CONCLUSION**

51.        Based upon the above facts and circumstances, I submit that

there is probable cause to issue the requested complaint and arrest warrant.

Respectfully Submitted,

John Graves
Task Force Officer
Federal Bureau of Investigation

This affidavit was sworn to via
telephone after a PDF was transmitted
by email, per Crim. R. 4.1. ~~and~~ on September
21, 2022 at 2:11 p.m.

Jennifer Dowdell Armstrong
United States Magistrate Judge